**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Criminal No. 02-106 (JDB)** |
| **BRIAN ERIC CARR,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

In 2003, defendant Brian Carr was sentenced to 262 months' imprisonment following his conviction on five counts of bank robbery in violation of 18 U.S.C. § 2113(a).  Carr's sentence was based in part on his status as a career offender under the then-mandatory U.S. Sentencing Guidelines (the "Guidelines"), which provide for an enhanced sentence if, among other things, the defendant has at least two prior felony convictions for a "crime of violence."  U.S. Sentencing Guidelines Manual § 4B1.1 (U.S. Sentencing Comm'n 2001) [hereinafter "U.S.S.G."].

Carr now moves to vacate, set aside, or correct his sentence, see 28 U.S.C. § 2255, arguing that the portion of the Guidelines that defines the term "crime of violence" to include offenses that "involve[] conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2), is unconstitutionally vague under Johnson v. United States, 135 S. Ct. 2551 (2015). But the term "crime of violence" also encompasses offenses that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1), and Carr's prior federal bank robbery convictions satisfy this alternative definition. Carr was therefore properly sentenced as a career offender, and his motion will be denied.

## BACKGROUND

### A.     CARR'S CONVICTION, SENTENCE, APPEAL, AND FIRST § 2255 MOTION

Carr was arrested in 2002 after police watched him rob a bank in downtown Washington, D.C. See Feb. 21, 2006 Mem. Op. [ECF No. 56] at 1. He was later connected to a string of bank robberies in the area, and a jury convicted him on five counts of bank robbery in violation of 18 U.S.C. § 2113(a). Id. at 2. At sentencing, the Court applied the career-offender provisions of the then-mandatory Guidelines, which provide a sentencing enhancement for an adult defendant who is convicted of "a crime of violence" and who "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.[1]

Relying on Carr's two prior federal bank robbery convictions, the Court determined that Carr was a career offender and calculated his Guidelines sentencing range to be 210 to 262 months. See Tr. of Sentencing [ECF No. 60] at 6:8–16, 7:4–6.[2] Then, citing Carr's extensive criminal history, the Court imposed the maximum sentence within that range. Id. at 20:19–23, 21:12–20.[3]

---

[1] At the time, the Guidelines defined the term "crime of violence" as any offense punishable by more than a year's imprisonment that either: "ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1); was "burglary of a dwelling, arson, or extortion, [or] involve[d] use of explosives," id. § 4B1.2(a)(2); or "otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another," id. These three clauses of § 4B1.2(a) were known, respectively, as the "elements clause," the "enumerated clause," and the "residual clause." See United States v. Taylor, 272 F. Supp. 3d 127, 130 (D.D.C. 2017).

[2] The Court never explicitly stated which of Carr's several prior convictions supported his designation as a career offender, nor did it identify the particular clause of § 4B1.2(a) that applied. See Tr. of Sentencing at 6:8–16; see also United States v. Booker, 240 F. Supp. 3d 164, 168 (D.D.C. 2017) (noting that "judges are not required by law to state at sentencing whether they are relying on the residual clause or the elements clause" and that "there was no practical reason for judges to make this distinction at sentencing prior to" 2015, when the Supreme Court struck down the residual clause). But the government argued at sentencing that Carr was a career offender because of his two prior federal bank robbery convictions, see Tr. of Sentencing at 16:1–10, and Carr himself now argues that those were the only two prior convictions that could have supported the career-offender designation, see Supp. Mot. to Vacate J. Under 28 U.S.C. § 2255 [ECF No. 64] ("Def.'s Mot.") at 4; accord United States' Opp'n to Def.'s Mots. to Vacate J. Under 28 U.S.C. § 2255 [ECF No. 66] ("Gov't Opp'n") at 4 (stating that Carr was sentenced as a career offender based both on the instant federal bank robbery convictions and on the two prior convictions for that crime).

[3] The career-offender guideline provides for a guaranteed minimum offense level based on the statutory maximum sentences carried by the defendant's prior offenses. See U.S.S.G. § 4B1.1. Carr's offense level under the career-offender guideline was 32; without the guideline, it would have been 28. See Tr. of Sentencing at 5:9–6:7. This would have resulted in a Guidelines sentencing range of 140 to 175 months' imprisonment.

The Court also sentenced Carr to three years' supervised release and ordered him to pay $15,823 in restitution. Id. at 22:21–23:10, 24:4–8.

Carr timely appealed his conviction and sentence, and the D.C. Circuit affirmed. See United States v. Carr, 373 F.3d 1350, 1355 (D.C. Cir. 2004). Carr then filed his first motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. See Pet. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [ECF No. 54]. The Court denied Carr's motion in 2006, see Feb. 21, 2006 Mem. Op. at 14, and nothing was filed in his case for the next ten years.

### B.    CARR'S SECOND § 2255 MOTION

On June 26, 2015, after Carr had served more than half of his 262-month sentence, the Supreme Court held that the residual clause of the Armed Career Criminal Act (the "ACCA")—a statutory provision materially identical to the residual clause of the career-offender Guidelines— was unconstitutionally vague. See Johnson, 135 S. Ct. at 2563; see also 18 U.S.C. § 924(e)(2)(B)(ii) (defining the term "violent felony," for purposes of the ACCA's fifteen-year mandatory minimum sentence, as "any crime punishable by imprisonment for a term exceeding one year that," in relevant part, "involves conduct that presents a serious potential risk of physical injury to another"). Less than a year later, the Supreme Court held that Johnson applies retroactively on postconviction review. See Welch v. United States, 136 S. Ct. 1257, 1268 (2016).

In June 2016, following the Supreme Court's decision in Welch, Chief Judge Beryl A. Howell issued a standing order appointing counsel for indigent defendants in this district whose sentences might be eligible for reduction under Johnson. See Standing Order at 1, http://www.dcd.uscourts.gov/sites/dcd/files/1853_001.pdf. Recognizing that any claim for postconviction relief would need to be filed within one year of the date that Johnson was decided, see 28 U.S.C. § 2255(f)(3), Chief Judge Howell's order also authorized defendants to file by June

26, 2016 "abridged" § 2255 motions—essentially, placeholders—that would need to be supplemented with full briefing by October 26, 2016.  See Standing Order at 2.  Carr then filed an emergency motion for leave to file a second § 2255 motion challenging his sentence under Johnson.  See Emergency Mot. for Authorization to File a Second or Successive Mot. Under 28 U.S.C. § 2255 [ECF No. 62].  The D.C. Circuit granted Carr's motion and directed this Court to treat it as an abridged § 2255 motion under Chief Judge Howell's order.  See Order [ECF No. 61].

Later that month, the Supreme Court granted certiorari in Beckles v. United States, a case that presented the question whether, in light of Johnson's invalidation of the ACCA's residual clause, the "identically worded" residual clause in § 4B1.2(a)(2) of the Guidelines was also unconstitutionally vague.  137 S. Ct. 886, 890 (2017).  Thereafter, Chief Judge Howell issued a second standing order staying the October 26, 2016 deadline for those supplemental petitions (like Carr's) that challenged only the residual clause of the career-offender Guidelines.  See Standing Order No. 2, http://www.dcd.uscourts.gov/sites/dcd/files/JohnsonUnitedStatesNo2.pdf.[4]

The Supreme Court decided Beckles in March 2017, holding that the advisory Guidelines are not subject to vagueness challenges because they "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range" and "do not fix the permissible range of sentences."  137 S. Ct. at 892.  Chief Judge Howell then issued another standing order directing those defendants whose deadlines had previously been stayed pending Beckles to file their supplemental § 2255 motions, if any, by May 26, 2017.  See Standing Order No. 4, http://www.dcd.uscourts.gov/sites/dcd/files/JohnsonUnitedStatesNo4.pdf.

---

[4] Chief Judge Howell extended this deadline a second time following the Supreme Court's grant of certiorari in Sessions v. Dimaya, a case that presented the question whether, again in light of Johnson, "a similarly worded clause in [18 U.S.C. § 16's] definition of 'crime of violence' suffers from the same constitutional defect" as the ACCA's residual clause.  138 S. Ct. 1204, 1210 (2018).  See Standing Order No. 3, http://www.dcd.uscourts.gov/sites/dcd/files/JohnsonUnitedStatesNo3.pdf.  However, a deadline was later reimposed for petitions that, like Carr's, challenged only the Guidelines residual clause.

Pursuant to Chief Judge Howell's order, Carr timely filed his supplemental § 2255 motion in May 2017. Carr's motion is now fully briefed and ripe for decision.

## LEGAL STANDARD

If a federal prisoner believes that his sentence was "imposed in violation of the Constitution or laws of the United States," he may move the sentencing court to vacate, set aside or correct his sentence. 28 U.S.C. § 2255(a). Such a motion must be filed within one year of the date on which the prisoner's conviction became final, or else (as relevant here) within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Id. § 2255(f)(1), (3). Moreover, although a prisoner may file one § 2255 motion as a matter of right, second or successive motions must be certified by the appropriate court of appeals "to contain"—again, as relevant here—"a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Id. § 2255(h)(2).

## DISCUSSION

Carr claims that he is entitled to a reduced sentence because his current sentence was enhanced pursuant to the unconstitutionally vague residual clause of the career-offender Guidelines. His argument proceeds in several steps. First, he asserts that although Beckles forecloses a vagueness challenge against the advisory Guidelines, he was sentenced in 2003, before the Guidelines were rendered advisory by United States v. Booker, 543 U.S. 220 (2005), so Beckles does not apply. See Def.'s Mot. at 11–12. Second, he claims that under Beckles's reasoning, the mandatory Guidelines are subject to a vagueness challenge, and that under Johnson and United States v. Sheffield, 832 F.3d 296 (D.C. Cir. 2016)—a circuit precedent that, in Carr's view, partially survived Beckles—the Guidelines residual clause is unconstitutionally vague. See

Def.'s Mot. at 11–16.  Finally, Carr maintains that he was improperly sentenced because no other

provision of the Guidelines supports his designation as a career offender.  See id. at 19–35.

The government raises several arguments in response.  First, the government claims that

Carr's motion is untimely.  See Gov't's Opp'n at 10–16.  According to the government, the only

right newly recognized in Johnson was the right not to be sentenced pursuant to the ACCA's

unconstitutionally vague residual clause; thus, because Carr asserts a different right here—the right

not to be sentenced under the Guidelines residual clause—Johnson did not trigger the running of

a new one-year limitations period under § 2255(f)(3).  Similarly, the government asserts that the

instant § 2255 motion—Carr's second—is barred because it does not "contain . . . a new rule of

constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was

previously unavailable."  Id. § 2255(h)(2); see Gov't's Opp'n at 17–20.  The government also

claims that Carr procedurally defaulted his vagueness challenge, see Gov't's Opp'n at 20–21; that

the application of Johnson to § 4B1.2(a) would not be retroactive on postconviction review under

Teague v. Lane, 489 U.S. 288 (1989), see Gov't's Opp'n at 21–27; that the mandatory Guidelines

are not subject to vagueness challenges, see id. at 27–31; and, finally, that Carr's prior federal bank

robbery convictions qualify as crimes of violence under the elements clause of the career-offender

Guidelines, § 4B1.2(a)(1); see id. at 31–35.

Carr's motion raises several questions of significant importance.  Does Beckles bar

vagueness challenges only to the advisory Guidelines, or to the mandatory Guidelines as well?[5]

_____

[5] See 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring in the judgment) (noting that the Beckles majority
"leaves open the question whether defendants sentenced to terms of imprisonment before our decision in [Booker]—
that is, during the period in which the Guidelines did 'fix the permissible range of sentences,'—may mount vagueness
attacks on their sentences" (citation omitted)).  The Seventh and Eleventh Circuits are split on this issue.  Compare
Cross v. United States, 892 F.3d 288, 306 (7th Cir. 2018) ("We conclude that the mandatory guidelines' incorporation
of the vague residual clause impeded a person's efforts to 'regulate his conduct so as to avoid particular penalties' and
left it to the judge to 'prescribe the sentencing range available.' . . . The mandatory guidelines are thus subject to

Was <u>Johnson</u>'s "newly recognized" right, 28 U.S.C. § 2255(f)(3)—or, equivalently, its "new rule

of constitutional law," <u>id.</u> § 2255(h)(2)—a narrow right not to be sentenced under the ACCA's

residual clause, or a broader right not be sentenced under any unconstitutionally vague provision?[6]

Does a defendant procedurally default a <u>Johnson</u> claim by failing to raise it at sentencing or on

direct appeal?[7]  Does <u>Johnson</u> apply retroactively to the Guidelines residual clause?[8]

The Court need not reach these questions to resolve Carr's motion, however.  Even

assuming that Carr's vagueness challenge to the Guidelines residual clause was timely, properly

raised, and otherwise meritorious, Carr would not be entitled to the relief he seeks because his

prior federal bank robbery convictions qualify as crimes of violence under the elements clause of

the career-offender Guidelines—§ 4B1.2(a)(1).  <u>Cf.</u> <u>Cross</u>, 892 F.3d at 291 (holding that the

---

attack on vagueness grounds." (alterations omitted) (quoting <u>Beckles</u>, 137 S. Ct. at 894–95)), <u>with</u> <u>In re Griffin</u>, 823 F.3d 1350, 1354 (11th Cir. 2016) ("The Guidelines—whether mandatory or advisory—cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to assist and limit the discretion of the sentencing judge."); <u>see also</u> <u>Gates v. United States</u>, No. 02-0380-2 (N.D. Ga. March 24, 2017) (likewise holding that <u>Griffin</u> survived <u>Beckles</u>), <u>aff'd</u>, No. 17-12245-G (11th Cir. Jul. 3, 2017) (unpublished), <u>cert. denied</u>, 138 S. Ct. 2024 (2018); <u>James v. United States</u>, No. 93-549-1 (N.D. Ga. March 22, 2017)  (concluding that <u>Beckles</u> did not alter <u>Griffin</u>'s holding that "even the former (mandatory) Sentencing Guidelines . . . are not subject to vagueness challenges under the Due Process Clause"), <u>aff'd</u>, No. 17-12238-E (11th Cir. Aug. 17, 2017) (unpublished), <u>cert. denied</u>, 138 S. Ct. 2024 (2018).

[6] The circuits are split on this issue as well.  <u>Compare</u> <u>Cross</u>, 892 F.3d at 293–94 (rejecting the government's argument "that <u>Johnson</u> recognized the invalidity of the residual clause only vis-à-vis the ACCA" and concluding instead that "[u]nder <u>Johnson</u>, a person has a right not to have his sentence <u>dictated</u> by the unconstitutionally vague language of the mandatory residual clause"); <u>Moore v. United States</u>, 871 F.3d 72, 80 (1st Cir. 2017) ("<u>Johnson II</u> announced a new rule of constitutional law . . . . That rule is this: The text of the residual clause, as employed in the ACCA, is too vague to provide, consistent with due process, a standard by which courts must fix criminal sentences."), <u>with</u> <u>United States v. Brown</u>, 868 F.3d 297, 303 (4th Cir. 2017) ("<u>Johnson</u> only recognized that ACCA's residual clause was unconstitutionally vague; it did not touch upon the residual clause at issue here." (citation omitted)); <u>Raybon v. United States</u>, 867 F.3d 625, 630 (6th Cir. 2017) ("[B]ecause the Supreme Court has not decided whether the residual clause of the mandatory Sentencing Guidelines is unconstitutionally vague . . . Petitioner's motion is untimely under § 2255(f)(3)." (citation omitted)).

[7] The Seventh and Tenth Circuits have answered in the negative.  <u>See</u> <u>Cross</u>, 892 F.3d at 294–95 (concluding that the requirements for excusing procedural default were established because "an extended prison term . . . constitutes prejudice" and because "'no one—the government, the judge, or the defendant—could reasonably have anticipated <u>Johnson</u>'" (alterations omitted) (quoting <u>United States v. Redrick</u>, 841 F.3d 478, 480 (D.C. Cir. 2016)); <u>accord</u> <u>United States v. Snyder</u>, 871 F.3d 1122, 1127 (10th Cir. 2017), <u>cert. denied</u>, 86 U.S.L.W. 3557 (2018).

[8] The Seventh Circuit has held that it does.  <u>See</u> <u>Cross</u>, 892 F.3d at 306 ("Elimination of the residual clause of section 4B1.2(a)(2) (in its mandatory guise) . . . 'alters the range of conduct or the class of persons that the law punishes' and qualifies as a retroactive, substantive rule." (quoting <u>Welch</u>, 136 S. Ct. at 1264)).

Guidelines residual clause was unconstitutional as applied to two pre-Booker defendants who "qualified for [the career-offender] designation because of the residual clause" (emphasis added)).

Section 4B1.2(a)(1) provides that an offense is a "crime of violence" if it is punishable by more than a year's imprisonment and if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." In determining whether an offense meets this definition, courts consider the offense "in terms of how the law defines [it] and not in terms of how an individual offender might have committed it on a particular occasion." United States v. Haight, No. 16-3123, 2018 WL 3077534, at *5 (D.C. Cir. June 22, 2018) (citation omitted). Thus, if the offense can be committed without the use, attempted use, or threated use of physical force, it is not categorically a crime of violence under § 4B1.2(a)(1).

> Here, the federal bank robbery statute provides that:
>
> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
>> Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—
>> Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a) (emphasis added). Carr does not dispute that he was convicted pursuant to the first of the two disjunctive paragraphs set out above—which criminalizes taking property or money from a bank "by force and violence, or by intimidation"[9]—nor does he dispute that a bank

---

[9] If Carr did dispute this assertion, the Court would have to engage in a modified categorical analysis to determine whether § 2113(a) sets out multiple, divisible sets of elements and, if so, whether the set of elements pursuant to which Carr was convicted categorically define a crime of violence. See United States v. McBride, 826

robbery committed "by force and violence" would satisfy § 4B1.2(a)(1). Nevertheless, he contends that federal bank robbery is not categorically a crime of violence for two reasons: first, because a reckless or even negligent act is sufficient to commit the offense "by intimidation," it does not categorically require an <u>intentional</u> threat of force, as § 4B1.2(a)(1) implicitly requires; and second, because the offense can be committed by threatening force that is insufficiently violent, it does not categorically require a threat of "physical" force, as required under <u>Johnson v. United States</u>, 559 U.S. 133 (2010) [hereinafter "<u>Curtis Johnson</u>"]. Neither argument has merit.

### A. FEDERAL BANK ROBBERY CATEGORICALLY REQUIRES AN INTENTIONAL THREAT

Like many criminal statutes, § 2113(a) does not expressly identify the mental state required to commit the crime it defines. Nonetheless, consistent with the longstanding presumption that criminal statutes "include . . . scienter requirements, even where the statute by its terms does not contain them," the Supreme Court has interpreted § 2113(a) to "require[e] proof of <u>general intent</u>—that is, that the defendant possessed knowledge with respect to the <u>actus reus</u> of the crime." <u>Carter v. United States</u>, 530 U.S. 255, 267–68 (2000). According to the Court, that <u>actus reus</u> is "the taking of property of another by force and violence or intimidation." <u>Id.</u>

Similarly, § 4B1.2(a)(1) does not expressly state what mental state is required with respect to the "use, attempted use, or threatened use of physical force" for an offense to qualify as a crime of violence. But the Supreme Court has interpreted analogous statutory language to "naturally suggest[] a higher degree of intent than negligent or merely accidental conduct." <u>Leocal v. Ashcroft</u>, 543 U.S. 1, 9 (2004) (so construing the phrase "use . . . of physical force against the

---

F.3d 293, 296 (6th Cir. 2016), <u>cert. denied</u>, 137 S. Ct. 830 (2017) ("Section 2113(a) seems to contain a divisible set of elements, only some of which constitute violent felonies . . . . If that is the case, then the modified categorical approach is necessary to determine whether a particular § 2113(a) conviction qualifies as a crime of violence." (citation omitted)). However, "because [Carr] appears to concede that his prior convictions fall under the first set of elements listed in § 2113(a), that question is beyond the limited scope of [the Court's] review." <u>Id.</u>

person or property of another" in 18 U.S.C. § 16(a)). Relying on Leocal, several other courts have

held that § 4B1.2(a)(1) applies only to crimes that "require either specific intent or knowledge with

respect to the use, threatened use, or attempted use of physical force." United States v. McNeal,

818 F.3d 141, 152, 153 n.9, 155–56 (4th Cir. 2016); see United States v. Almenas, 553 F.3d 27,

34 (1st Cir. 2009).[10] Given Carter's statement that § 2113(a) requires "knowledge" with respect

to the "intimidation" element of federal bank robbery, courts have almost uniformly held that

§ 2113(a) satisfies § 4B1.2(a)(1)'s intent requirement. See United States v. Horsting, 678 Fed.

App'x 947, 950 (11th Cir. 2017) (unpublished); United States v. Cross, 691 Fed. App'x 312, 312–

13 (9th Cir. 2017) (unpublished); McNeal, 818 F.3d at 155; see also McBride, 826 F.3d at 296

(concluding that federal bank robbery is a crime of violence under § 4B1.2(a)(1) in part because it

requires "knowledge . . . with respect to taking the property by intimidation" (citation omitted)).

Carr's attempt to escape this authority is unavailing. Carr points to several cases holding

that "[u]nder section 2113(a), 'intimidation occurs when an ordinary person in the teller's position

reasonably could infer a threat of bodily harm from the defendant's acts.'" United States v. Kelley,

412 F.3d 1240, 1244 (11th Cir. 2005) (citation omitted); accord United States v. Yockel, 320 F.3d

818, 824 (8th Cir. 2003); United States v. Woodrup, 86 F.3d 359, 364 (4th Cir. 1996); United

States v. Foppe, 993 F.2d 1444, 1451 (9th Cir. 1993). As an example, Carr cites Kelley, a case in

which two defendants robbed a bank without speaking to or even making eye contact with any

bank employee. See 412 F.3d at 1244 ("[T]here 'was no gun displayed, no note, [and] no demand

of any kind made . . . .'"). The Eleventh Circuit nonetheless affirmed their federal bank robbery

---

[10] Although the D.C. Circuit has not yet decided the issue, the government does not dispute that § 4B1.2(a)(1) at least requires knowledge as to the use-of-force element. See Gov't's Opp'n at 33–34. And since courts often rely on interpretations of analogous statutory provisions when applying the categorical approach, see United States v. Haight, 16-3123, 2018 WL 3077534, at *6 (D.C. Cir. June 22, 2018) (relying on prior interpretations of § 4B1.2(a)(1) to construe an analogous provision of the ACCA), the Court will assume this to be true for purposes of this motion.

convictions, concluding that their actions would intimidate a reasonable bank teller: one defendant had "slammed onto the teller counter hard enough that [one teller] heard the noise from another room," another teller "was within arm's length of [the defendants] as they removed cash from [a] cash drawer," and both tellers were "so frightened they failed to activate the bank's silent alarm." Id. at 1244–45. According to Carr, Kelley and these other cases show that a person can commit federal bank robbery by intimidating bank employees unintentionally—that is, negligently or recklessly—and that the crime therefore does not satisfy § 4B1.2(a)(1)'s intent requirement.

Almost every court that has considered this argument has rejected it. See, e.g., McNeal, 818 F.3d at 155; Horsting, 678 Fed. App'x at 950; Cross, 691 Fed. App'x at 312–13. Relying on Carter, these cases conclude that § 2113(a) requires the government to prove not only that the defendant engaged in objectively intimidating conduct, but also that he "knew that his actions were objectively intimidating." McNeal, 818 F.3d at 155.[11] Usually, however, a jury cannot peer into a defendant's mind to determine what he knew at the time of a robbery, so it can infer his subjective knowledge from the surrounding circumstances—including whether his actions were sufficient to intimidate a reasonable bank teller. See Horsting, 678 Fed. App'x at 950 ("That we assess 'by intimidation' from the standpoint of a reasonable person . . . does not mean the intimidating defendant has not knowingly 'threatened use of physical force . . . .' Rather, our approach measures the defendant's knowledge objectively, taking into account the circumstances

---

[11] Accord McBride, 826 F.3d at 296 ("The defendant must at least know that his actions would create the impression in an ordinary person that resistance would be met by force."); Horsting, 678 Fed. App'x at 950 ("[W]e . . . require, for purposes of § 2113(a), the government to prove that the accused knowingly took the property and that he knew his actions were objectively intimidating."); United States v. Landingham, No. 3:04-CR-106, 2017 WL 2972332, at *4 (D. Nev. July 12, 2017) ("[A] defendant charged with bank robbery must intentionally perform objectively intimidating actions in the course of unlawfully taking the property of another." (citation and alterations omitted)), appeal docketed, No. 17-16765 (9th Cir. Sept. 1, 2017); United States v. Salinas, No. 08-CR-338, 2017 WL 2671059, at *5 (E.D. Cal. June 21, 2017) ("[F]ederal courts, including the Supreme Court, have consistently held that a defendant cannot be convicted of taking property by intimidation if the defendant did not know that his actions were intimidating."); Ford v. United States, No. 08-CV-4932, 2011 WL 705607, at *5 (D.N.J. Feb. 18, 2011) ("[T]o commit bank robbery, the actor must intentionally use violence or intentionally threaten to use violence . . . .").

surrounding his actions."); see also United States v. Avant, 275 F.2d 650, 653 (D.C. Cir. 1960)

(explaining that because subjective knowledge is "always difficult, and sometimes impossible, to

establish by direct evidence," "the law permits a jury to find knowledge . . . based on reasonable

inferences from concrete facts in evidence"). Thus, the fact that courts apply an objective standard

to determine whether a jury could have inferred knowledge from the defendant's actions does not

ipso facto reduce the applicable mental state requirement to recklessness or negligence.[12]

To see the difference, consider a hypothetical example. Suppose a wealthy person enters

a bank intending to withdraw some cash from her sizeable checking account. She is in a hurry, so

when she reaches the teller counter, she says, "I need $10,000 in cash—now!" She then reaches

into her back pocket for her wallet, anticipating that she will need to present some form of

identification. The teller, who doesn't recognize the person as a customer, interprets her request

as a robbery demand and reasonably believes that she is reaching for a weapon. Fearing that his

life is in danger, the teller quickly hands over the cash and later calls the police. At the wealthy

person's trial for federal bank robbery, if the jury concludes that the teller was reasonably

intimidated by the wealthy person's words and actions but that the wealthy person did not

subjectively intend the intimidation, could it return a conviction?

---

[12] Elonis v. United States, 135 S. Ct. 2001 (2015), is not to the contrary. There, the Supreme Court concluded that 18 U.S.C. § 875(c)—a statute that criminalizes "any communication containing any threat . . . to injure the person of another"—was not satisfied by proof that "a reasonable person would regard [the defendant's] communications as threats." Id. at 2012. The Court explained that "[h]aving liability turn on whether a 'reasonable person' regards the communication as a threat—regardless of what the defendant thinks—'reduces culpability on the all-important element of the crime to negligence,'" and that courts "have long been reluctant to infer that a negligence standard was intended in criminal statutes." Id. at 2011 (citations omitted). But Elonis explicitly recognized that § 875(c) "is satisfied if the defendant transmits a communication . . . with knowledge that [it] will be viewed as a threat," id. at 2012, and this is precisely what § 2113(a) requires: the defendant must be subjectively aware that his conduct is objectively intimidating. Indeed, Elonis actually supports the government's position, because it suggests that courts should construe § 2113(a) as requiring knowledge rather than negligence. See id. at 2012 ("Federal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state.").

Under McNeal and the other cases cited above, the answer is no. The wealthy person was probably negligent, see Model Penal Code § 2.02(d) (a person acts with criminal negligence when she "should be aware of a substantial and unjustifiable risk that [an element of an offense] exists or will result from [her] conduct"), and she may have been reckless, see id. § 2.02(c) (a person acts recklessly when she "consciously disregards a substantial and unjustifiable risk that [an element of an offense] exists or will result from [her] conduct"). But she did not knowingly intimidate the teller because she did not realize that her conduct would be perceived as intimidating. See id. § 2.02(b) (a person acts knowingly with respect to a result when she "is aware that it is practically certain that [her] conduct will cause [that] result"). By contrast, a defendant does knowingly intimidate a teller if he leaps over the teller counter knowing, but not caring, that his actions would almost certainly intimidate a reasonable person in the teller's position. See Kelley, 412 F.3d at 1245.

It is true, as Carr points out, that several courts of appeals have made statements suggesting that a defendant's "intent" is immaterial for purposes of intimidation under § 2113(a). See Kelley 412 F.3d at 1244 ("[A] defendant can be convicted under section 2113(a) even if he did not intend for an act to be intimidating."); Yockel, 320 F.3d at 824 ("As intimidation is measured, in this circuit, under an objective standard, whether or not Yockel intended to intimidate the teller is irrelevant in determining his guilt."); Woodrup, 86 F.3d at 364 ("[T]he intimidation element of § 2113(a) is satisfied . . . whether or not the defendant actually intended the intimidation."). Taken at face value, these statements suggest that even a negligent threat—such as the one made by the hypothetical wealthy person above—could constitute intimidation under § 2113(a).

As at least one of the courts cited by Carr has clarified, however, these statements are best understood as disclaiming any requirement that the defendant act with specific intent. See

McNeal, 818 F.3d at 155 ("Woodrup presented the issue of whether bank robbery by intimidation requires a specific intent to intimidate. Plainly, Woodrup knew his conduct was intimidating . . . ." (second emphasis added)); see also Foppe, 993 F.2d at 1451 ("The court should not instruct the jury on specific intent because the jury can infer the requisite criminal intent from the fact that the defendant took the property of another by . . . intimidation."); Horsting, 678 Fed. App'x at 950 (explaining that Kelley "does not conflict with the Supreme Court's requirement of knowledge concerning the actus reus of unarmed bank robbery"). Specific intent—or purpose, in the language of the Model Penal Code—requires that it be the offender's "conscious object" to bring about a particular result, see Model Penal Code § 2.02(2)(a); mere awareness that the result is almost certain to occur is insufficient. See United States v. Bailey, 444 U.S. 394, 405 (1980) (explaining that the Model Penal Code term "'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent"). Thus, Kelley, Woodrup, Yockel, and Foppe reject the notion that § 2113(a) requires specific intent (i.e., purpose) as to intimidation, while McNeal, McBride, Horsting, and Cross confirm that it requires general intent (i.e., knowledge)—not some less culpable state like recklessness or negligence.

In sum, because § 2113(a) requires that the defendant be aware that his conduct would intimidate a reasonable bank teller under the circumstances, it categorically requires more than mere recklessness or negligence—even though it measures intimidation by an objective standard. The statute therefore satisfies § 4B1.2(a)(1)'s intent requirement.

B.     FEDERAL BANK ROBBERY CATEGORICALLY REQUIRES A THREAT OF VIOLENT FORCE

Next, Carr contends that federal bank robbery does not qualify as a crime of violence because it does not categorically require the actual, attempted, or threatened use of "physical force." As the D.C. Circuit has recently reaffirmed, the term "physical force" in § 4B1.2(a)(1) means

14

"violent" force—in other words, force that is "capable of causing physical pain or injury to another person." United States v. Brown, 892 F.3d 385, 402 (D.C. Cir. 2018) (quoting Curtis Johnson, 559 U.S. at 140).[13] Carr claims that federal bank robbery does not categorically satisfy this requirement because a person could commit the crime by intimidating a bank teller with a threat of insufficiently violent force—for example, by threatening to poison him, Def.'s Mot. at 34, "hit him on the wrist," Def.'s Reply at 32, or "pinch [him] in a sensitive area," id.

Carr's hypotheticals are too far-fetched to place federal bank robbery outside the ambit of § 4B1.2(a)(1). See United States v. Redrick, 841 F.3d 478, 484 (D.C. Cir. 2016) (noting that the Supreme Court has repeatedly "cautioned against excessive 'legal imagination'" in applying the categorical approach (citation omitted)), cert. denied, 137 S. Ct. 2204 (2017), reh'g denied, 138 S. Ct. 724 (2018). Carr's suggestion that a person might rob a bank by threatening to poison a teller has been rejected by at least two courts of appeals. See McNeal, 818 F.3d at 156 ("[I]t will be the rare bank robber who commits that offense with poison."); McBride, 826 F.3d at 296; see also Haight, 2018 WL 3077534, at *6 (rejecting the argument that an offense was not a violent felony under the ACCA because it could be "committed with so-called indirect force, such as using a hazardous chemical to burn someone, rather than with more direct force, such as using a gun or a knife to maim someone"). And Carr's suggestion that a person might commit federal bank robbery by threatening to pinch or slap a teller strains credulity—particularly given that, as Carr stresses elsewhere, the crime requires a threat of force that is sufficient to intimidate a reasonable bank

---

[13] The government does not dispute that Curtis Johnson applies retroactively to sentences handed down before that case was decided in 2010. See Cross, 892 F.3d at 296. It does, however, rely on several decisions that classify federal bank robbery as a crime of violence but that were decided before Curtis Johnson. See United States v. Wright, 957 F.2d 520, 521 (8th Cir. 1992); United States v. Jones, 932 F.2d 624, 625 (7th Cir. 1991); United States v. Selfa, 918 F.2d 749, 751 (9th Cir. 1990); United States v. Maddalena, 893 F.2d 815, 819 (6th Cir. 1989). Because those courts did not have the opportunity to evaluate federal bank robbery in light of Curtis Johnson's violent-force requirement, the Court does not rely on their decisions here.

teller.  Cf. United States v. Brewer, 848 F.3d 711, 715 (5th Cir. 2017) ("It is hard to imagine any successful robbery accomplished by threatening some far-removed reprisal that does not involve physical force.").

Ultimately, Carr cites no case in which a defendant was convicted of federal bank robbery in the "special (nongeneric) manner for which he argues," Gonzales v. Duenas–Alvarez, 549 U.S. 183, 193 (2007), nor does he otherwise show that his proffered nonviolent means of committing that crime are "realistic probabilit[ies]" rather than "theoretical possibilit[ies]," Redrick, 841 F.3d at 485 (alterations in original).  Thus, this Court joins with nearly every court that has considered the question and concludes that federal bank robbery categorically requires either the use or threatened use of violent force.  Accord Brewer, 848 F.3d at 715; McNeal, 818 F.3d at 156; McBride, 826 F.3d at 296; Cross, 691 Fed. App'x at 312–13.[14]  The crime therefore satisfies § 4B1.2(a)(1)'s violent-force requirement.

---

[14] As Carr points out, two district courts in the Western District of Washington have held that federal bank robbery is not categorically a crime of violence under § 4B1.2(a)(1).  These courts concluded:

> (1) the federal unarmed bank robbery statute does not explicitly require that a defendant intentionally use force, violence, or fear of injury; (2) federal bank robbery may be committed through "intimidation" which does not require a threat of violent physical force, see United States v. Hopkins, 703 F.2d 1102, 1103 (9th Cir. 1983), and United States v. Parnell, 818 F.3d 974, 980 (9th Cir. 2016); and (3) the minimum culpable conduct for a conviction of federal unarmed bank robbery does not require the presence of another person.

Knox v. United States, C16-5502, 2017 WL 347469, at *2 (W.D. Wash. Jan. 24, 2017) (quoting Order at 9, Doriety v. United States, No. 16-cv-00924-JCC (W.D. Wash. Nov. 9, 2016), ECF No. 12)).  The first point made by these courts is immaterial, as the Supreme Court has expressly read § 2113(a) to contain an implied mental state requirement.  See Carter, 530 U.S. at 268.  Nor do Hopkins and Parnell demonstrate that federal bank robbery does not categorically require a threat of violent force: neither case addresses the federal bank robbery statute or § 4B1.2(a)(1) and, more importantly, both cases predate Curtis Johnson.  Finally, although it is true that a conviction under the second disjunctive paragraph of § 2113(a)—which prohibits "enter[ing] . . . any bank . . . with intent to commit in such bank . . . any felony affecting such bank . . . or any larceny"—does not require the presence of a another person, Carr does not argue that he was convicted pursuant to this paragraph of § 2113(a).  See McBride, 826 F.3d at 296 (declining to perform a modified categorical analysis as to the second paragraph of § 2113(a) where the defendant did not raise the issue in his § 2255 motion).

Finally, Carr cites a third Western District of Washington case that read the phrase "by force or violence or by intimidation" in a different criminal statute "to include intimidation through means other than force or violence."  Bolar v. United States, No. C16-986RSL, 2017 WL 1543166, at *3 n.2 (W.D. Wash. Apr. 28, 2017).  As the Court

## CONCLUSION

Because federal bank robbery is categorically a crime of violence under § 4B1.2(a)(1), Carr was properly sentenced as a career offender regardless of whether the residual clause of § 4B1.2(a)(2) is unconstitutionally vague. Carr's motion to vacate, set aside, or correct his sentence will therefore be denied. A separate order has been issued on this date.

/s/

JOHN D. BATES
United States District Judge

Dated: July 19, 2018

---

has already explained, however, Carr has failed to demonstrate a "realistic probability" that a person could commit federal bank robbery by threatening some form of nonviolent reprisal. Gonzales, 549 U.S. at 193. In short, this Court is unpersuaded by the reasoning of these three Western District of Washington cases, and it declines to follow them here.