## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**BRIAN ERIC CARR,**<br><br>Defendant. | Crim. No. 02-106 (JDB) |

### MEMORANDUM OPINION & ORDER

Defendant Brian Eric Carr is currently detained at United States Penitentiary Atlanta ("USP Atlanta"), a medium-security facility in Atlanta, Georgia, where he is serving a 262-month sentence of imprisonment for five jury convictions of bank robbery, in violation of 18 U.S.C. § 2113(a). See Emergency Mot. for Compassionate Release ("Def.'s Mot.") [ECF No. 83] at 1–3; see also Judgment [ECF No. 33]. His expected release date is September 23, 2022, but he has moved for compassionate release, requesting a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) in light of his underlying health conditions and the threat of COVID-19 spreading within his detention facility, see Def.'s Mot. at 1, 14, 17–33. The government opposes the motion. See Gov't's Opp'n to Def.'s Emergency Mot. for Compassionate Release ("Gov't's' Opp'n") [ECF No. 89] at 1.

### Legal Standard

Under the First Step Act of 2018, a court may, upon motion of the Bureau of Prisons or a defendant, reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," the court concludes that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C.

§ 3582(c)(1)(A)(i); see also USSG § 1B1.13 (setting forth the Commission's policy statement, which requires (among other things) that the defendant's release not pose "a danger to the safety of any other person or to the community"). "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)." United States v. Demirtas, Criminal Action No. 11-356 (RDM), 2020 WL 3489475, at *1 (D.D.C. June 25, 2020). And a court may consider a defendant's motion for such a reduction only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring [such] a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

## Analysis

The parties agree that at least thirty days have passed since Mr. Carr requested release from FCI Atlanta and, therefore, that he has exhausted his administrative rights and his motion is now properly before the Court. See Def.'s Mot. at 17; Gov't's Opp'n at 12. Mr. Carr argues that his age and underlying health conditions, in combination with the spread of the COVID-19 virus in the federal prisons, are extraordinary and compelling reasons for granting him early release. See Def.'s Mot. at 17. By his telling, Mr. Carr suffers from asthma such that "he now uses his inhaler 5–6 times per week and 3 nights per week" and considers himself to have "moderate persistent asthma." Id. at 21. He also describes himself as suffering from "emphysema," or chronic obstructive pulmonary disease ("COPD"); the respiratory consequences of twenty-six years of smoking; high-blood pressure; and mental health conditions. Id. at 22–24. He notes that, demographically, he is in at least three high-risk categories as a fifty-two-year-old black male. Id. at 18–20; see also id. at 20 ("[T]hose in the 50 to 64 year old category were the second highest

2

percentage of hospitalizations by age (65 and above was the highest)."). These factors, Mr. Carr contends, increase his risk of becoming "seriously ill" if he contracts COVID-19, which he sees as inevitable at USP Atlanta given that there are already confirmed cases among inmates and staff. Id. at 11–13, 23–25; see also id. at 26 ("The high infection rate of Covid-19 and high mortality rate for those with pre-existing conditions, coupled with the proven inability of the BOP to address a surge in cases, makes clear that these are just the kind of extraordinary and compelling circumstances that warrant a sentence reduction in this case.").

The government responds that Mr. Carr's motion should be denied for two reasons—(1) Mr. Carr has failed to identify any "extraordinary and compelling reasons" for a reduction under § 3582(c)(1)(A); and (2) the statutory sentencing factors under § 3553(a) weigh against his release. Gov't's Opp'n at 12. The Court focuses on the second of these arguments because, even assuming that Mr. Carr's medical conditions in the context of the COVID-19 pandemic do constitute "extraordinary and compelling reasons" for his release, the sentencing factors under § 3553(a) militate against his release. Cf. United States v. Pawlowski, No. 20-2033, 2020 WL 3483740, at *1–3 (3d Cir. June 26, 2020) (affirming denial of a prisoner's motion for compassionate release based on the district court's weighing of the § 3553(a) factors, despite prisoner presenting "extraordinary and compelling reasons" for release, including suffering from hypertensive heart disease, COPD, shortness of breath, sleep apnea, and having only one lung). [1]

Mr. Carr's 262-month sentence remains appropriate and "not greater than necessary," 18 U.S.C. § 3553(a), to accomplish the Court's purpose in sentencing him for five counts of bank robbery. At the time of Mr. Carr's original sentencing, the Court acknowledged Mr. Carr's

---

[1] The Court is also mindful that, as of July 21, 2020, the Bureau of Prisons reports that there are four inmates and six staff members at USP Atlanta with confirmed active cases of COVID-19. See COVID-19 Cases, Federal Bureau of Prisons (July 21, 2020), https://www.bop.gov/coronavirus/. It is thus not a given that Mr. Carr will contract COVID-19 due to his incarceration there.

"troubled life," but nevertheless structured his sentence to impose "the maximum within the guideline range" because the "sentences involve a series of bank robberies . . . carried out with threats of violence and death." Tr. of Sentencing ("Sent. Tr.") [ECF No. 60] at 21:2–5, 12–15. The Court noted that Mr. Carr "has a long history of past bank robberies and two previous convictions for bank robberies." Id. at 21:15–16. Indeed, at the time of the instant offenses, he was on supervised release for a prior conviction for bank robbery. Id. at 21:21–24. The Court also observed that Mr. Carr was "largely uncooperative throughout the course of the[] proceedings," "apparent[ly] attempt[ed] to intimidate a witness," and allegedly attempted to change his appearance "in order to avoid identification testimony being made." Id. at 22:1–9.

Mr. Carr now contends that, even if his previous misconduct deserved a harsh sentence, he has already served a sufficiently long sentence given his crimes—specifically, as of June 2020, he had served 199 months of his sentence, with an additional 24 months of good time credit. Def.'s Mot. at 30. Mr. Carr points out that, taking into account his good-time credit, he has already served a sentence within the guidelines range (i.e., 210 to 262 months). Id. And he emphasizes that, since his incarceration, his behavior in prison has demonstrated a commitment to self-improvement, including taking a wide range of classes and not having any disciplinary issues for almost four years. Id.

The Court commends Mr. Carr for his accomplishments while incarcerated, particularly his educational achievements and 2016 completion of a nonresidential drug abuse program. See id. Nevertheless, the Court concludes that, for similar reasons to those expressed at his original sentencing, 262 months remains the appropriate sentence for his five convictions. Mr. Carr has a long history of criminal conduct—in particular, bank robbery. During the course of the bank robberies that led to his current sentence, Mr. Carr relied on "threats of death involving notes with

specific references to terms such as 'die' and gun[s]." Sent. Tr. 5:21–24.  While in prison, Mr. Carr has committed at least fourteen infractions, including assault and threatening bodily harm.  <u>See</u> Sealed Ex. H to Def.'s Mot. [ECF No. 88] at 4; <u>but see</u> Attachment D to Gov't's Opp'n [ECF No. 89-3] at 1–8 (listing twenty-nine infractions).  Although the most recent of these infractions was in July 2016, which Mr. Carr notes was before the completion of his cognitive behavioral therapy drug abuse program, <u>see</u> Reply in Supp. of Compassionate Release [ECF No. 95] at 19–20, the Court nevertheless concludes that this improved record over the past four years does not outweigh his long criminal history and the severity of his offenses.  Taking into account, then, the various factors under § 3553(a), including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the seriousness of the offense," and the need "to afford deterrence to criminal conduct" and "to protect the public for further crimes of the defendant," the Court concludes that 262 months remains a "sufficient, but not greater than necessary," sentence for Mr. Carr's crimes.[2]

## Conclusion

Accordingly, upon consideration of [83] defendant's emergency motion for compassionate release, and the entire record herein, it is hereby **ORDERED** that the motion is **DENIED**.

/s/
JOHN D. BATES
United States District Judge

Dated: July 21, 2020

---

[2] For similar reasons, the Court is also not convinced that Mr. Carr is not "a danger to the safety of any other person or to the community." <u>See</u> USSG § 1B1.13(2); <u>see also</u> 18 U.S.C. § 3582(c)(1) (requiring that the resentencing court consider whether a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission").